UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **WILLIE J. HARVEY,** | ) |
| Plaintiff, | ) Case No. CV 15-7030 AJW |
| v. | ) MEMORANDUM OF DECISION |
| **CAROLYN W. COLVIN,** **Acting Commissioner of the Social Security Administration,** | ) ) ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts. [See JS 2]. In a February 3, 2014 written hearing decision that constitutes the final decision of the Commissioner, an administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of plantar keratomas, hammertoes, mood disorder, and a history of drug and alcohol abuse, with cocaine use in remission since 2000 but ongoing alcohol use. [AR 19]. The ALJ determined that plaintiff retained the residual functional capacity ("RFC") to perform medium work with frequent postural activities, occasional kneeling and crouching, no use of ladders, no walking on

1  uneven terrain, no hazards, occasional interaction with coworkers and supervisors, and no public contact.
2  [AR 19-21].

3  Based on the testimony of a vocational expert, the ALJ found that plaintiff's RFC precluded him
4  from performing his past relevant work but did not preclude him from performing jobs that exist in
5  significant numbers in the national economy, such as the jobs of dry janitor, hospital cleaner, and
6  hotel/motel cleaner. [AR 26-28].  The ALJ concluded that plaintiff was not disabled from October 17, 2012,
7  the date his SSI application was filed, through the date of the ALJ's decision. [AR 28].

## Standard of Review

9  The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial
10 evidence or is based on legal error.  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015); Thomas
11 v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla,
12 but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such
13 relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v.
14 Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to
15 review the record as a whole and to consider evidence detracting from the decision as well as evidence
16 supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel,
17 188 F.3d 1087, 1089 (9th Cir. 1999).  "Where the evidence is susceptible to more than one rational
18 interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld. Thomas v.
19 Barnhart, 278 F.3d 947, 954 (9th Cir. 2002) (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595,
20 599 (9th Cir. 1999)).

## Discussion

22 Plaintiff contends that the ALJ erred in finding that plaintiff did not have severe paranoid
23 schizophrenia with auditory hallucinations and visual hallucinations, and that the mental functional
24 limitations assigned by the ALJ were not based on substantial evidence in the record as a whole, including
25 new and material evidence submitted to the Appeals Council. [See JS 4-5].

26 At step two of the sequential evaluation process, the ALJ determines whether a claimant has any
27 severe, medically determinable physical or mental impairments that meet the durational requirement. See
28 20 C.F.R. §§ 404.920(a)(4), 416.920(a)(4).  In assessing severity, the ALJ must determine whether a

claimant's medically determinable impairment or combination of impairments significantly limits his or her physical or mental ability to do "basic work activities."[1] 20 C.F.R. §§ 404.1521(a), 416.921(a); Webb v. Barnhart, 433 F.3d 683, 686-687 (9th Cir. 2006). The ALJ may find a medically determinable impairment or combination of impairments "not severe *only if* the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Webb, 433 F.3d at 686 (quoting Smolen v. Chater, 80 F.3d 1273, 1289-1290 (9th Cir. 1996)). The ALJ must consider a claimant's subjective symptoms in determining severity, provided that the claimant has a medically determinable impairment that could reasonably be expected to produce the symptoms. Social Security Ruling ("SSR") 96-3p, 1996 WL 374181, at *2.

The ALJ found that plaintiff had a severe mood disorder, but that schizophrenia was "not established by the medical records" and therefore did not qualify as a severe impairment. [AR 19]. In assessing the nature and severity of plaintiff's mental impairment, the ALJ said that she gave no significant weight to the January 2014 opinion of plaintiff's treating psychiatrist, Eunjoo Justice, M.D., and that she gave "considerable weight" both to the February 2013 opinion of the Commissioner's examining psychologist, Rosa M. Colonna, Ph.D., and to the March 2013 opinion of the nonexamining state agency physician, Kim Morris, Psy. D. [See AR 23-24, 26].

Dr. Justice, a Los Angeles County Department of Mental Health ("County Mental Health") psychiatrist, completed an "Evaluation Form for Mental Disorders" giving plaintiff a diagnosis of paranoid schizophrenia with auditory hallucinations and visual hallucinations. [AR 326-329]. Dr. Justice stated that plaintiff received treatment on a monthly basis from August 2012 through December 2013. [AR 326; see AR 254-287]. The ALJ noted that Dr. Justice found that

> [plaintiff's] intellectual functioning was impaired due to auditory and visual hallucinations. Similarly, his memory, concentration, and [ability to perform] tasks were impaired. His

---

[1] Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations. 20 C.F.R. §§ 404.1521(b), 416.921(b).

3

>affective status was typically aggressive, and his mood was generally angry. [Plaintiff] complained of social difficulties. His delusions, hallucinations, and disorganized thoughts typically prevented him from doing normal things like bathing, eating, or running errands. He was socially withdrawn and isolated, and refused to go out of his home boundaries. He feared "aliens" and did not trust anyone. Dr. Justice opined [the plaintiff] appeared unable to adapt to work life situations. He had maladaptive behavior and aggression when agitated. He lacked skills to socialize with others and take direction from supervisors due to paranoia and suspicion of others' intentions.

[AR 23; see AR 328]. Dr. Justice prescribed plaintiff Latuda (lurasidone)[2] and Celexa (citaprolam)[3]. [AR 275, 282]. Dr. Justice also gave plaintiff a Global Assessment of Function ("GAF") score of 46, which signifies serious symptoms, such as suicidal ideation, severe obsessional rituals, frequent shoplifting or any serious impairment in social, occupational, or school functioning, such has having no friends, being unable to keep a job and unable to work. [AR 329]. See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Multiaxial Assessment, 27-36 (4th ed. rev. 2000)).

In her February 2013 psychological examination report, Dr. Colonna reported that plaintiff was "extremely rude and irritable" initially and shouted at her to leave the door open because he got claustrophobic. Once she agreed to leave the door open plaintiff was generally cooperative. [AR 236, 238]. Plaintiff said that his problems began in 1987 when he suffered a gunshot wound.[4] [AR 236, 239]. He reported racing thoughts, auditory hallucinations, and visual hallucinations. He said that he was treated at a County Mental Health clinic, where he received antipsychotic and antidepressive medication. [AR 237].

---

[2] Lurasidone "is used to treat the symptoms of schizophrenia (a mental illness that causes disturbed or unusual thinking, loss of interest in life, and strong or inappropriate emotions)." U.S. Nat'l Library of Med, and Nat'l Inst. of Health, MedlinePlus website, Lurasidone, *available at* https://medlineplus.gov/druginfo/meds/a611016.html (last visited Feb. 7, 2017).

[3] Citaprolam is used to treat depression. U.S. Nat'l Library of Med, and Nat'l Inst. of Health, MedlinePlus website, Citaprolam, *available at* https://medlineplus.gov/druginfo/meds/a699001.html (last visited Feb. 7, 2017).

[4] During an initial assessment at one County Mental Health clinic, plaintiff reported had been shot in the "head/face" near his left eye during a drive-by shooting in 1987. [AR 258-259].

1  Plaintiff reported that he could not tolerate the general public, constantly had negative thoughts, felt
2  paranoid, had few daily activities, did not get along well with others, and had no friends other than his
3  nephew and the "lady friend" from whom he rented a room. [AR 23-24, 236-238]. Plaintiff had an
4  "extensive cocaine dependent history", but said that he had been clean since 2000. [AR 237].

5  On mental status examination, Dr. Colonna found that plaintiff exhibited a dysthymic mood and
6  irritable affect. His memory was moderately diminished for immediate, intermittent, and remote recall. His
7  attention and concentration were also moderately diminished. He was fully oriented and displayed normal
8  speech, thought processes, and psychomotor activity. Plaintiff did not exhibit delusions, hallucinations,
9  bizarreness, confusion, or psychotic indicators. His fund of knowledge was poor. His insight and judgment
10 were "grossly age appropriate," and he "responded appropriately to imaginary situations requiring social
11 judgment and knowledge of the norms." [AR 238]. On the Wechsler Adult Intelligence Scale-IV, plaintiff's
12 full-scale IQ score was 76. [AR 238-239].

13 Based on "test results and clinical data," Dr. Colonna opined that plaintiff's "overall cognitive ability
14 is borderline to low-average range." [AR 239]. Dr. Colonna gave plaintiff "probable" psychiatric diagnoses
15 of "cocaine dependence in full sustained remission per self-report" and "mood disorder, not other specified."
16 [AR 240]. Dr. Colonna opined that plaintiff was able to understand, remember, and carry out "short
17 simplistic instructions" and to make "simplistic work-related decisions." [AR 239-240]. Plaintiff also had
18 a "mild inability" to understand, remember, and carry out detailed instructions, to maintain concentration,
19 and to interact appropriately with supervisors, coworkers, and peers. [AR 24, 238].

20 Dr. Morris, the nonexamining state agency psychologist, opined that plaintiff had severe mental
21 impairments consisting of "affective disorders" and "borderline intellectual functioning." [AR 67]. Dr.
22 Morris opined that plaintiff was "moderately limited" in the following mental functional abilities:
23 understanding, remembering, and carrying out detailed instructions; working in coordination with or in
24 proximity to others without being distracted by them; completing a normal workday and workweek without
25 interruptions from psychologically-based symptoms; performing at a consistent pace without an
26 unreasonable number and length of rest periods; interacting appropriately with the general public; accepting
27 instructions and responding appropriately to criticism from supervisors; and getting along with coworkers
28 or peers without distracting them or exhibiting behavioral extremes. [AR 71-72].

The ALJ rejected Dr. Justice's opinion because it "does not contain an evaluation of the claimant's residual functional capacity" and "merely consists of a documentation of [plaintiff's] subjective complaints." [AR 26]. The ALJ relied on Dr. Colonna's opinion because it was supported by her examination findings and consistent with "substantial medical evidence of record," and on Dr. Morris's opinion because "it is overall consistent with the other opinions in the record" and with plaintiff's allegations and testimony. [AR 26].

The ALJ's rejection of Dr. Justice's opinion in favor of the opinions of the nontreating physicians at step two was error, and the ALJ's finding that plaintiff does not have severe paranoid schizophrenia is not based on substantial evidence in the record as a whole.

First, an RFC assessment is not part of the severity inquiry, so the absence of an RFC assessment in Dr. Justice's January 2014 report is not a specific, legitimate reason for rejecting Dr. Justice's findings or conclusions as to the existence or severity of paranoid schizophrenia. See Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("Greater weight must be given to the opinion of treating physicians, and in the case of a conflict the ALJ must give specific, legitimate reasons for disregarding the opinion of the treating physician."); see also 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv) (stating that a claimant's RFC is assessed at the fourth step of the sequential evaluation); 20 C.F.R. §§ 404.1520a(d)(3), 416.920a(d)(3) ("If we find that you have a severe mental impairment(s) that neither meets nor is equivalent in severity to any listing, we will then assess your residual functional capacity.").

Second, Dr. Justice did not rely on "mere documentation" of plaintiff's subjective symptoms. A medically determinable mental impairment "must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms." 20 C.F.R. §§ 404.1508, 416.908. Symptoms are the claimant's "own description of [his or her] physical or mental impairment." 20 C.F.R. §§ 404.1528(a), 416.928(a). Psychiatric signs are medically demonstrable and observable phenomena which indicate specific abnormalities of behavior, affect, thought, memory, orientation, and contact with reality. 20 C.F.R. §§ 404.1528(b), 416.928(b). Laboratory findings include "psychological phenomena which can be shown by the use of a medically acceptable laboratory diagnostic techniques," including psychological tests. 20 C.F.R. §§ 404.1528(c), 416.928(c).

Dr. Justice elicited a history from plaintiff and conducted a mental status examination. Although

1  plaintiff's history and mental status examination results depended on his subjective reports and presentation,
2  Dr. Justice did not merely document or parrot plaintiff's subjective symptoms.[5]  Instead, Dr. Justice
3  permissibly pointed to evidence in plaintiff's history and mental status examination of abnormalities that
4  indicated impairments in his intellectual functioning, memory, concentration, ability to perform tasks, and
5  his ability to interact with others. [See AR 326-329].

6  As the Ninth Circuit has explained, "[m]ental health professionals frequently rely on the combination
7  of their observations and the patient's reports of symptoms. . . .  To allow an ALJ to discredit a mental health
8  professional's opinion solely because it is based to a significant degree on a patient's 'subjective allegations'
9  is to allow an end-run around our rules for evaluating medical opinions for the entire category of
10 psychological disorders." Ferrando v. Comm'r of Soc. Sec. Admin., 449 Fed. Appx. 610, 612 n.2 (9th Cir.
11 2011); see Ryan v. Comm'r of Social Sec., 528 F.3d 1194, 1199 (9th Cir. 2008) (holding that the ALJ erred
12 in rejecting an examining physician's opinion where nothing in the record "suggest[ed] that [the physician]
13 disbelieved [the claimant's] description of her symptoms, or that [the physician] relied on those descriptions
14 more heavily than his own clinical observations in reaching the conclusion that [the claimant] was incapable
15 of maintaining a regular work schedule"); Regennitter v. Comm'r Soc. Sec. Admin., 166 F.3d 1294, 1300
16 (9th Cir. 1999) (holding that substantial evidence did not support the ALJ's finding that examining
17 psychologists improperly took the claimant's "statements at face value" where the psychologists' reports
18 did not contain "any indication that [the claimant] was malingering or deceptive"); see also Blankenship
19 v. Bowen, 874 F.2d 1116, 1121 (6th Cir. 1989) (per curiam) ("A psychiatric impairment is not as readily
20 amenable to substantiation by objective laboratory testing as a medical impairment. When mental illness
21 is the basis of a disability claim, clinical and laboratory data may consist of the diagnosis and observations
22 of professionals trained in the field of psychopathology. The report of a psychiatrist should not be rejected
23 simply because of the relative imprecision of the psychiatric methodology . . . .") (brackets and ellipses
24 omitted) (quoting Poulin v. Bowen, 817 F.2d 865, 873-874 (D.C. Cir. 1987)); cf. 20 C.F.R. Pt. 404, Subpt.

---

[5]  Dr. Colonna relied on her interview with plaintiff and her mental status examination findings to render an opinion about plaintiff's psychiatric diagnosis and resulting mental functional limitations, and Dr. Morris, in turn, relied on Dr. Colonna's findings.  The ALJ, however, did not discredit either nontreating source on that basis. [AR 67, 71-72, 236-240].

P, App. 1, § 12.00C.2 (stating that evidence that the Commissioner may consider in evaluating whether a mental disorder meets the Listing of Impairments includes, among other things, a claimant's "medical, psychiatric, and psychological history," "[t]he results of physical or mental status examinations, structured clinical interviews, psychiatric or psychological rating scales, measures of adaptive functioning, or other clinical findings," the claimant's medications and their effects, and "[o]bservations and descriptions of how you function during examinations or therapy").

For these reasons, the ALJ failed to articulate legally sufficient reasons for rejecting Dr. Justice's opinion regarding the nature and severity of plaintiff's mental impairment at step two.

In addition, substantial evidence does not support the ALJ's conclusion that the nontreating source opinions were more consistent with the record as a whole for purposes of the step two inquiry. The ALJ characterized plaintiff's medical records as "rather minimal" and did not summarize or discuss plaintiff's mental health treating source records other than Dr. Justice's January 2014 report. However, the record before the ALJ included County Mental Health records covering the roughly 17-month period from August 2012 through November 2013. The treatment records reveal that plaintiff had a longitudinal history of treatment for paranoia, auditory hallucinations, visual hallucinations, delusions, irritability, anger, and depression, and that he was prescribed antipsychotic and antidpressant medications, including Haldol (haloperidol)[6], Latuda, and Celexa. [See AR 250-287, 305-319]. Plaintiff had "fair" to "good" response to his medications without side effects and was compliant with his medications, but he continued to be symptomatic and reported exacerbation in his symptoms when he sometimes ran out of medications despite his generally good medication compliance. [See, e.g. AR 277, 313-314, 316-318].

Moreover, plaintiff submitted additional evidence to the Appeals Council ("AC") in support of his unsuccessful request for review. The new evidence consists of treatment records from the period December 12, 2013 through March 13, 2014 (before and shortly after issuance the ALJ's decision on February 3, 2014). [AR 332-335]. The Appeals Council considered the additional evidence but found that it did not

---

[6] Haloperidol is "used to treat psychotic disorders (conditions that cause difficulty telling the difference between things or ideas that are real and things or ideas that are not real)." U.S. Nat'l Library of Med, and Nat'l Inst. of Health, MedlinePlus website, Haloperidol, *available at* https://medlineplus.gov/druginfo/meds/a682180.html (last visited Feb. 7, 2017).

"provide a basis for changing" the ALJ's decision and denied plaintiff's request for review. [AR 2].

Where, as here, the Appeals Council denies review, "the ALJ's decision becomes the final decision of the Commissioner, and the district court reviews that decision for substantial evidence, based on the record as a whole," which includes "evidence submitted to and considered by the Appeals Council." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1161-1162 (9th Cir. 2012). Since the Appeals Council considered the additional treatment records, they are part of the record in this action for purposes of judicial review. Those treatment records indicate that plaintiff's diagnosis of paranoid schizophrenia with auditory hallucinations and visual hallucinations was unchanged, and his prescriptions for Latuda and Celexa were renewed. [AR 332-335]. Plaintiff's mental status examinations during that period were positive for auditory hallucinations, visual hallucinations, depressed mood, sad affect, and paranoia. [AR 332-335]. In light of plaintiff's treating source records documenting his history of treatment for psychotic signs and symptoms and his treating source diagnosis of paranoid schizophrenia with auditory hallucinations and visual hallucinations, substantial evidence does not support the ALJ's finding that the nontreating source opinions were more consistent with the record as a whole.

The treating source records provide evidence that surpasses the "de minimis" severity threshold and establishes paranoid schizophrenia with auditory hallucinations and visual hallucinations as a severe, medically determinable impairment at step two. See Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001) (explaining that the severity inquiry is "a de minimis screening device to dispose of groundless claims"); see also McCrea v. Comm'r of Social Sec., 370 F.3d 357, 360 (3rd Cir. 2004) ("The burden placed on an applicant at step two is not an exacting one. . . . Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.") (quoting SSR 85-28, 1985 56856, at *3).

The Commissioner contends that even if the ALJ erred at step two, the error is harmless because the ALJ did not end the disability evaluation procedure at step two and considered "all symptoms" in assessing plaintiff's RFC. [JS 13]. That contention lacks merit.

Plaintiff has the burden to demonstrate that the ALJ's error was not harmless. See Ludwig v. Astrue, 681 F.3d 1047, 1053-1055 (9th Cir. 2012) (holding that an ALJ's error was harmless where the claimant did not show a "substantial likelihood of prejudice" as a result of the error, and that the harmless error analysis must consider "case-specific factors," including "an estimation of the likelihood that the result

would have been different" absent the error). Plaintiff has satisfied that burden. [See JS 10-11]. The ALJ's RFC finding limits plaintiff to occasional interaction with co-workers and supervisors and no interaction with the general public. It contains no other mental functional limitations. [AR 21]. Dr. Justice, however, opined that plaintiff had symptom-related impairments in intellectual functioning, memory, concentration, performance of tasks, social interaction, and the ability to adapt to work-like settings. [See AR 326-330]. Since the ALJ did not consider and discuss all of those limitations at step four, her error at step two cannot be considered harmless. Cf. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (holding that where the ALJ failed to consider the impairment of bursitis at step two, any error was harmless because he expressly considered bursitis and its resulting functional limitations in assessing the claimant's RFC at step four).

Defendant also contends that the ALJ incorporated limitations in memory and concentration into her RFC finding by limiting plaintiff to unskilled work. Defendant is incorrect; the ALJ's RFC finding does not include a limitation to unskilled work. Rather, the representative alternative jobs identified by the vocational expert (whose testimony the ALJ adopted) happen to be unskilled jobs rather than skilled or semiskilled jobs.[7] [AR 21, 27-28].

For the reasons described above, the ALJ's step two finding is legally erroneous and is not supported by substantial evidence in the record.

///

///

**Conclusion**

---

[7] In any event, there is no merit to the suggestion that a claimant with memory and concentration deficits necessarily can perform unskilled work. Unskilled work is defined as work that "needs little or no judgment" and involves performing "simple duties that can be learned on the job in a short period of time.... [A] person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed." 20 C.F.R. §§ 404.1568(a), 416.928(a). To perform unskilled work, however, a person must "retain the capacity to perform meet the intellectual and emotional demands of such jobs on a sustained basis." SSR 85-15, 1985 WL 56857, at *4. "[C']ompetitive, remunerative, unskilled work" requires "the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." SSR 85-15, 1985 WL 56857, at *4. A claimant whose impairments in memory, concentration, or other areas preclude sustained performance of those abilities would not be able to perform unskilled work.

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court. See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion). Evidence should be credited and the case remanded for an award of benefits where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

Harman, 211 F.3d at 1178 (quoting Smolen, 80 F.3d at 1292).

Plaintiff notes that the record lacks vocational evidence, he concedes that "it is not fully clear whether crediting [Dr. Justice's] opinion would warrant a finding of disability," and he therefore requests a remand for further administrative proceedings. [JS 11, 20-21]. That request is granted. On remand, the Commissioner shall direct the ALJ to give plaintiff the opportunity for a new hearing and to issue a new hearing decision with appropriate findings. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th Cir. 2003) (remanding for further administrative proceedings where several "outstanding issues" remain to be resolved, including "if she is disabled, the timing and duration of her disability," and whether, according to a vocational expert, there was alternative work the claimant could perform with all of the limitations supported by the record).

Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded to defendant for further administrative proceedings consistent with this memorandum of decision**.

February 9, 2017

_____
ANDREW J. WISTRICH
United States Magistrate Judge